Joshlynn SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–96–00045–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Nov. 6, 1997.

Decided Nov. 7, 1997.

Terry L. Cox, Law Office of Fugler & Cox, Marshall, for appellant.

Todd E. Fitts, Asst. District Attorney, Marshall, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

Joshlynn Smith appeals from his conviction for manslaughter. He was convicted by a jury and sentenced to twenty years' imprisonment. On appeal, he contends that the court committed error by finding his statements about the offense to be voluntarily given. He further argues that the remaining evidence is factually and legally insufficient to support his conviction, and that portions of that evidence should have been excluded because it was obtained only as a result of the improperly admitted statement. We find these arguments to be without merit and affirm the conviction.

This case involves a gang-related drive-by shooting in which a child was killed on August 27, 1995. In his statements, Smith related that he and his friends were looking for members of a rival gang to shoot. Smith was driving the car in which two of his friends were riding when they spotted a member of the other gang. Smith and his companions had pistols, and they all opened fire in the general direction of the gang member. During the incident, Smith was shot in the arm by one of the passengers in his car. The child was riding by on his bicycle at the time, and one of the bullets struck him in the head and killed him. Smith was arrested in a neighboring town after seeking medical care on August 28.

Smith first contends that the statements he made while in police custody were not voluntarily given. Smith actually gave statements to the police on four separate occasions: August 29, September 18, October 4, and October 6, 1995. The trial court entered findings that the last three statements were given freely and voluntarily and were admissible into evidence. Only the last two statements were actually admitted into evidence. Smith contends that the first statement was involuntary because he relied on promises of a "light sentence" made by the prosecuting attorney to his mother and communicated to him by her. He then argues that once he had let the cat out of the bag there was no point in attempting to put it back by later refusing to make another statement. Thus, he argues that the taint of the first statement extended to the later statements as well.

Smith's first statement was not offered into evidence, and no ruling was requested or made concerning that statement. In the statements admitted into evidence, Smith admitted driving the car and firing a gun, but he did not admit that his bullets killed the child.

■ The State argues that Smith waived his complaints about the confessions because, at the punishment phase of the trial, he admitted committing the crime. When at the punishment phase of trial the defendant admits his guilt to the crime of which he has been convicted, he waives all nonjurisdictional defects which may have occurred during the guilt/innocence phase of the trial. *DeGarmo v. State*, 691 S.W.2d 657, 661 (Tex. Crim.App.1985); *Cook v. State*, 940 S.W.2d 344, 349 (Tex.App.—Amarillo 1997, pet. ref'd); *Barrett v. State*, 900 S.W.2d 748, 750 (Tex.App.—Tyler 1995, pet. ref'd).

At the punishment phase, Smith testified that:

A. I stuck my gun out the window and I fired a few shots but I wasn't trying to hurt or shoot anybody.

. . . .

Q. Are you guilty of the crime you have been convicted of, Mr. Smith?

A. To be truthful, I think only God knows who really did it.

Q. But are you guilty of a crime thought (sic) that you were convicted of by this jury, manslaughter?

A. I don't think so.

Q. But you did fire the gun?

A. Yes.

■ The crime of manslaughter is defined as recklessly causing the death of an individual. TEX. PENAL CODE ANN. § 19.04(a) (Vernon 1994). Smith admitted shooting his pistol in the general direction of the victim, while another person was also firing, but he did not admit that his own actions caused the victim's death. In context, we cannot find that appellant has clearly admitted his guilt to the specific crime charged in the indictment. Therefore, the *DeGarmo* doctrine does not apply. *See Williams v. State*, 930

S.W.2d 898, 900 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd).

A different legal doctrine, however, does apply to this case. The evidentiary doctrine of curative admissibility is a rule of law that is typically used by appellate courts when they first find that the trial court erred by admitting evidence over proper and timely objection, but also find that the defendant thereafter presented the same kind of evidence or testimony to which he had previously objected. In such a situation, the error is deemed to have been waived or cured. *Moncrief v. State*, 707 S.W.2d 630 (Tex.Crim.App. 1986); *Sweeten v. State*, 693 S.W.2d 454, 456 (Tex.Crim.App.1985) (opinion on reh'g). This doctrine applies when the evidence is admitted, regardless of whether at the guilt/innocence or punishment phase of the trial. *Verell v. State*, 749 S.W.2d 197, 200 (Tex.App.—Fort Worth 1988, pet. ref'd).

A defendant does not waive his right to challenge the admissibility of evidence if he sought to meet, destroy, or explain it by the introduction of rebutting evidence. *Id.* In this case, however, Smith did not seek to meet, destroy, or explain the contents of his statements when he testified. To the contrary, he admitted that everything said in the statement was true. He only argued that he was not sure that the shot that killed the victim came from his gun.

Under these facts, even if we assume that the statements were improperly admitted, any claim of error has been waived because Smith testified during the punishment phase as to the same pertinent facts revealed by his statements. This point of error is overruled.

Smith next contends that the evidence is legally insufficient to support the verdict. In our review of the legal sufficiency of the evidence, we employ the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), and *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991), and look to see whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Smith's argument under this point is based upon the assumption that we would find all of his statements to be inadmissible. In determining the sufficiency of the evidence, this Court must consider all the evidence, whether properly or improperly admitted. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App.1993); *Beltran v. State*, 728 S.W.2d 382, 389 (Tex.Crim.App.1987). Thus, even had we found the statements inadmissible, we would consider them in our review of the evidence. The evidence as set out in our factual summary of this case is legally sufficient to support the jury's verdict.

Smith further contends that the evidence is factually insufficient to support the verdict. This argument is based upon the contention that the State could not conclusively prove that a bullet from Smith's gun struck the child and testimony that the bullet had struck the ground before ricocheting into the victim. In our review of the factual sufficiency of the evidence, we view all the evidence and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Examples of such a wrong and unjust verdict include instances in which the jury's finding is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." *Clewis*, 922 S.W.2d at 135. If we find factual insufficiency, we vacate the conviction and remand for a new trial. *Jones*, 944 S.W.2d at 648; *Clewis*, 922 S.W.2d at 133–135.

The fact that Smith fired a gun in the general direction of the victim is undisputed. The only dispute appears to be whether the victim was struck by one of Smith's bullets, since three guns were fired from inside the car: Smith's .380, a 9mm automatic pistol, and a .22 caliber pistol. The State's expert excluded the .22 caliber because of weight. Because of the deformity of the projectile, the rifling marks were not clear enough for the expert to match the projectile to the weapon that fired it. The problem is compounded because a 9mm and a .380 caliber bullet have the same diameter. The expert testified, however, that the marks that he could see were of the type made by a Colt .380 and were unlike those made by a 9mm.

In summary, there is proof that the bullet was fired by *a* Colt .380, but not from *this* Colt .380. The expert's testimony was sufficient to show that of the three guns fired, two were excluded. In the context of the other evidence in this case and in the absence of evidence to the contrary, this is sufficient evidence to allow the jury to conclude that the pistol admittedly used by Smith was the one that fired the fatal shot. The evidence is factually sufficient to support the jury's verdict.

The judgment is affirmed.